[Cite as *State v. Henderson*, 2018-Ohio-2816.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ERICULO LAROSS HENDERSON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 15 MA 0137**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 14 CR 1331

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor, *Atty. Ralph M. Rivera*, Assistant Prosecutor, Mahoning County Prosecutor's Office, 21 W. Boardman Street., 6th Floor., Youngstown, Ohio 44503, For Plaintiff-Appellee and

*Atty. Peter Galyardt,* Assistant State Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215, for Defendant-Appellant.

Dated:  June 29, 2018

---

**Robb, P.J.**

{¶1}    Defendant-Appellant Ericulo Henderson appeals from his conviction entered in Mahoning County Common Pleas Court for second-degree felony child endangering.  The jury found Appellant guilty of second-degree felonious assault and second and third-degree felony child endangering.  The verdicts were merged and the state elected to have Appellant sentenced on second-degree felony child endangering.  Multiple issues are raised in this appeal.   Appellant argues there was insufficient evidence produced by the state to prove child endangering and felonious assault.  Similarly, he argues the jury verdicts for child endangering and felonious assault were not supported by the manifest weight of the evidence.   Next, Appellant asserts three claims of ineffective assistance of counsel.  He argues counsel was ineffective because he failed to ask the court to, in accordance with Crim.R. 33, reduce the offenses to the lesser included offenses because the offenses were not supported by sufficient evidence.  Appellant asserts counsel failed to object to admission of allegedly improper and prejudicial expert opinion testimony.   Appellant also contends counsel was ineffective for failing to request a jury instruction on the lesser included offenses.  Next, he argues prosecutorial misconduct occurred when the state elicited testimony from an expert on the ultimate issue of fact that was not beyond the common knowledge of the jury.  Similarly, Appellant also asserts plain error resulted from the admission of that testimony.  Additionally, as to plain error, Appellant argues plain error occurred when the jury instructions did not include an instruction on lesser included offenses.  Lastly, Appellant contends the imposition of a maximum sentence is not supported by the record.  For the reasons expressed below, all assignments of error lack merit.  The verdicts and sentence are affirmed.

## Statement of the Facts and Case

{¶2}    Appellant was indicted for one count of felonious assault in violation of R.C. 2903.11(A)(1)(D), a second-degree felony; one count of second-degree felony child endangering in violation of R.C 2919.22(B)(3)(E)(1)(3); and two counts of third-

Case No. 15 MA 0137

degree felony child endangering, in violation of R.C. 2919.22(A)(E)(1)(2)(c) and R.C. 2919.22(B)(3)(E)(1)(3). 12/30/14 Indictment. The incident leading to this indictment occurred between October 4, 2014 and October 12, 2014. The victim was an 11 year old male child.

{¶3} Appellant was the child's tutor on two occasions. Trial Tr. 168-169. The first time Appellant tutored the child, the child was seven years old. Trial Tr. 311. The tutoring was mainly for reading and was successful. Trial Tr. 315. At that time the child was in a private school. Trial Tr. 166. The child was later moved to the public school system. Trial Tr. 166-167. The transition was somewhat hard on the child and the child's grades began to fall. Trial Tr. 167. The child's mother sought out Appellant to tutor the child again. Trial Tr. 168-169. Tutoring this time was mostly in math. Trial Tr. 175. During the tutoring sessions, which only lasted about a week, Appellant used discipline if the child got an answer wrong; Appellant described his technique as a fear induced learning environment. Trial Tr. 174, 201, 320. According to Appellant the child could not add three digit numbers and was having trouble carrying the numbers. Trial Tr. 325. To instill fear in the child to follow his instructions, Appellant took the child to the basement and hit him with a paddle/plank of wood on the child's clothed buttocks. Trial Tr. 201-202, 253, 324. This happened five times in one session. Trial Tr. 326. Appellant described it "like an exorcism" to get the victim to carry the number; Appellant did not want to hurt the child he just wanted to get him to refocus. Trial Tr. 325, 328.

{¶4} On October 12, 2014, after one of the sessions, the child showed his right buttocks to his aunt. Trial Tr. 178, 214. On that buttock was a crescent shaped abrasion about 6 cm by 1 cm. Trial Tr. 255. The child told the aunt Appellant hit him with a board and it hurt to sit. Trial Tr. 216. The aunt took a picture of the abrasion and sent it in a text message to the mother explaining the child indicated Appellant hit him. Trial Tr. 178, 217. The next morning, the mother took the child to the pediatrician and the pediatrician referred them to the Child Advocacy Center (CAC). Trial Tr. 182. Dr. Melville, from the CAC, interviewed and examined the child. Trial Tr. 183. At the follow-up visit two weeks later the mark was still very visible on the child's buttock. Trial Tr. 183, 256-257. Dr. Melville in his report indicated this case was "strongly concerning for

physical abuse." State's Exhibit 6. He testified the injury was the result of unreasonable physical discipline. Trial Tr. 261.

{¶5} The case was then referred to Youngstown Police Department, Family Investigative Services Unit. Trial Tr. 222. Investigator Rowley, an investigator from that unit, set up a scheduled interview with Appellant; however, Appellant did not appear. Trial Tr. 227.

{¶6} Appellant entered a not guilty plea to the indictment and originally choose to represent himself. 1/13/15 Plea; 3/9/15 Pretrial J.E. However, the appointed attorney was ordered to remain as standby counsel. 3/9/15 Pretrial J.E. Appellant, pro se, moved to dismiss the indictment claiming the court did not have jurisdiction over him. 4/24/15 Motion. The motion was denied. 5/6/15 J.E. Following the denial, Appellant chose to have standby counsel represent him. Trial was set for June 1, 2015.

{¶7} Prior to the start of trial, the state moved to amend the indictment. The state asked for the second-degree felony child endangering charge to be amended to include language that Appellant "created substantial risk of serious physical harm to" the child. 6/1/15 Motion; Trial Tr. 9-11. It also moved to dismiss one of the third-degree felony child endangering charges. 6/1/15 Motion; Trial Tr. 9-11. The trial court granted the motion, amended the indictment, and dismissed the one charge. Trial Tr. 9-11.

{¶8} The jury found Appellant guilty of second-degree felonious assault in violation of R.C. 2903.11(A)(1)(D), second-degree felony child endangering in violation of R.C. 2919.22(B)(3)(E)(1)(3), and third-degree felony child endangering in violation of R.C. 2919.22(A)(E)(1)(2)(c). 6/2/15 Jury Verdicts; 6/5/15 J.E. The parties agreed the offenses were allied offenses of similar import and the verdicts merged. Sentencing Tr. 3. The state elected to have Appellant sentenced on the second-degree felony child endangering verdict. Sentencing Tr. 3. The state recommended a six year sentence; Appellant asked for community control sanctions. Sentencing Tr. 2. The trial court sentenced Appellant to eight years. Sentencing Tr. 13.

{¶9} Appellant filed a timely notice of appeal. Counsel was appointed to represent him on appeal. Appointed counsel failed to prosecute the appeal and the appeal was dismissed. 6/9/16 J.E. Appointed counsel filed a motion for reconsideration asking for the appeal to be reinstated. 6/17/16 Motion. Counsel indicated intent to file

an *Anders* brief if the appeal was reinstated. 6/30/16 J.E. The appeal was reinstated and counsel was granted 14 days to file a brief. 6/30/16 J.E. Counsel filed the *Anders* brief. 7/11/16 Brief. Appellant was notified of the *Anders* brief and given 30 days to file his own brief. 7/25/16 J.E. Appellant requested an extension of time to file a brief. 8/5/16 Motion. His request was denied. 12/9/16 J.E. Two weeks later, appointed counsel's motion to withdraw was granted and new counsel was appointed. 12/22/16 J.E. Following extensions of time, new counsel filed the merit brief on May 22, 2017. The state filed its answer brief on August 30, 2107. Briefing was closed following Appellant's September 20, 2017 reply brief.

### First Assignment of Error

"The trial court erred in denying Ericulo Henderson's Crim.R. 29 motion for acquittal, and violated his rights to due process and a fair trial when, in the absence of sufficient evidence, it convicted him of child endangering, including the merged child-endangering and felonious-assault findings of guilt."

{¶10} A claim of insufficient evidence invokes a due process concern and raises the question as to whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), syllabus. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Id.* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993) (sufficiency of the evidence claim viewed in the light most favorable to the prosecution). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶11} The jury found Appellant guilty of second-degree felonious assault, second-degree felony child endangering, and third-degree felony child endangering. The portion of the felonious assault statute he was found guilty of violating states:

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn;

(D)(1)(a) Whoever violates this section is guilty of felonious assault. Except as otherwise provided in this division or division (D)(1)(b) of this section, felonious assault is a felony of the second degree.

R.C. 2903.11(A)(1)(D).

{¶12} Appellant was found guilty of second-degree felony child endangering defined as:

(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

* * *

(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child;

* * *

(E)(1) Whoever violates this section is guilty of endangering children.

* * *

(3) If the offender violates division (B)(2), (3), (4), or (6) of this section, except as otherwise provided in this division, endangering children is a felony of the third degree. If the violation results in serious physical harm to the child involved, or if the offender previously has been convicted of an offense under this section or of any offense involving neglect,

abandonment, contributing to the delinquency of, or physical abuse of a child, endangering children is a felony of the second degree.

R.C. 2919.22(B)(3)(E)(1)(3).

{¶13} Appellant was found to have caused serious physical harm under this statute.

{¶14} Appellant was also found guilty of third-degree felony child endangering as defined as:

(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.

* * *

(E)(1) Whoever violates this section is guilty of endangering children.
(2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following, and, in the circumstances described in division (E)(2)(e) of this section, that division applies:
* * *

(c) If the violation is a violation of division (A) of this section and results in serious physical harm to the child involved, a felony of the third degree.

R.C. 2919.22(A)(E)(1)(2)(c).

{¶15} The felonious assault and both child endangering crimes have a common element – to have caused serious physical harm. Second degree felony child

Case No. 15 MA 0137

endangering also requires a substantial risk of serious physical harm and excessive corporal punishment. These are the elements Appellant focuses on in this assignment of error. He asserts the paddling was not excessive. He contends there was no evidence that paddling a fully clothed child created a substantial risk of serious physical harm. He also argues the abrasion on the victim's buttocks does not amount to serious physical harm.

**{¶16}** The analysis begins with whether there was sufficient evidence produced by the state to show the administration of corporal punishment was excessive under the circumstances. This is an element of the second-degree felony child endangering crime.

**{¶17}** It is undisputed in this case that the injury was caused by the administering of a paddle board on the victim's clothed buttocks. The victim confirmed this admission.

**{¶18}** We have previously stated that in corporal discipline cases, the state must prove the corporal discipline was improper in light of all of the surrounding facts and circumstances. *State v. Rosa*, 7th Dist. No. 12 MA 60, 2013-Ohio-5867, 6 N.E.3d 57, ¶ 41. The factors to be considered are: "(1) the child's age; (2) the child's behavior leading up to the discipline; (3) the child's response to prior non-corporal punishment; (4) the location and severity of the punishment; and (5) the parent's state of mind while administering the punishment." *Id.*, quoting *State v. Luke*, 3d Dist. No. 14-10-26, 2011-Ohio-4330, ¶ 23; *State v. Hart*, 110 Ohio App.3d 250, 255–56, 673 N.E.2d 992 (3d Dist.1996) ("The propriety and reasonableness of corporal punishment in each case must be judged in light of the totality of the circumstances.").

**{¶19}** In the case at hand, the victim was 11 years old. The victim was not correctly completing a math problem and this led to the paddling; Appellant admitted the victim was not a behavioral problem. Trial Tr. 322, 324. Appellant testified he used fear and discipline to get his students to focus. Trial Tr. 320. Appellant testified he gave the victim the opportunity to get the math problems correct, but the victim would not carry the digit correctly and kept getting the problems wrong. Trial Tr. 325. Testimony indicated Appellant yelled and scared his students prior to paddling them. Trial Tr. 284; 320. It is undisputed the victim was paddled on his clothed buttocks five times during

one tutoring session.  Trial Tr. 326.  The victim's aunt, who was the first person the victim showed the injury, described it as follows:

> It was – his skin was reddish and purplish and it had a scab.  You could see like the where the pores of his skin was so open that they were bleeding, you know, it was bleeding out, and it was like holes.  You could actually see holes in it.  And I asked him, I said, does it hurt?  He said, yes, it hurts to sit and everything.  So I put gauze, and I put Neosporin on it, and I bandaged it up and tried to cushion it as much as possible.  But I had to – I sent a text to his mom and showed her the picture.

Trial Tr. 216.

{¶20} Dr. John Melville from the CAC testified at trial.  Trial Tr. 241-242.  He saw the victim the day after the injury was shown to the aunt.  He described the injury as a crescent shaped abrasion about 6cm by 1cm.  Trial Tr. 255.  It was dark red and there was evidence of some healing.  Trial Tr. 255.  At the two week follow up visit there was evidence of healing, but the injury was not gone.  Trial Tr. 256-257.  After one month of healing, the doctor testified there was further healing but the mark was still present.  Trial Tr. 257.  Pictures taken at the CAC were admitted into evidence.  Trial Tr. 254; State's Exhibit 2-5.

{¶21} Appellant testified he did not want to hurt the victim.  Trial Tr. 328.  He explained he taught in a fear induced learning environment.  Trial Tr. 320.  He stated it was "like an exorcism" to get the victim to carry the number correctly in doing a three digit math problem.  Trial Tr. 325.

{¶22} Considering these facts in the light most favorable to the prosecution the punishment was improper and excessive.

{¶23} As to the felonious assault and third-degree felony child endangering convictions, the question is whether there was serious physical harm to the child.  As there was sufficient evidence of excessive corporal punishment, the analysis for the second-degree felony child endangering conviction is whether there was a substantial risk of serious physical harm to the child.

{¶24} "Serious physical harm to persons" is defined as:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

**{¶25}** "Substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

**{¶26}** Appellant cites this court to a case where the appellate court found there was not sufficient evidence of serious physical harm or substantial risk of serious physical harm. He contends the cases cited by him are examples of worse conduct by an offender and the appellate court found there was not sufficient evidence of the crimes. Three of the cases - *Ivey*, *Wright*, and *Enovitch* - are from the Eighth Appellate District and are from the mid to late 1990s. In *Ivey*, the child had welts and bruises on his buttocks and legs from being beat with a belt for disciplinary reasons. *State v. Ivey*, 98 Ohio App.3d 249, 648 N.E.2d 519 (8th Dist.1994). In reversing the conviction, the Eighth Appellate District court stated:

Although the punishment may have been excessive, the state produced no evidence that the bruises and welts caused by the strapping resulted in serious physical harm or created a substantial risk of serious physical harm. On the contrary, the evidence showed the boy went to school, without incident, the next day. There was no evidence he was in great pain or that he had trouble sitting or walking. The treating physician did not find it necessary to hospitalize the boy, order any type of pain killer (even aspirin), or to schedule another medical exam to check on his progress.

> The evidence presented in the record shows the injuries sustained by the child were the result of the imposition of corporal punishment by a father who judged his son's school conduct and acts of deception warranted a strong physical disciplinary response. The state failed to prove by sufficient evidence that this type of whipping resulted in serious physical harm or could result in a substantial risk of serious physical harm to the child.

*Id.* at 524.

**{¶27}** Similarly in the other two Eighth Appellate District cases the court found there was not sufficient evidence of serious physical harm. *City of Shaker Hts. v. Wright*, 8th Dist. No. 69517, 1996 WL 355309 (June 27, 1996); *State v. Enovitch*, 8th Dist. No. 72827, 1998 WL 518163 (Aug. 20, 1998). *Wright* was a child endangering case and in that case the court explained:

> This conclusion, that the element of seriousness was lacking, is buttressed by the following: (1) the marks were small and were receding over time; (2) the emergency room physician testified that he thought that there was no scarring at the site of the marks and did not feel there had been any abuse; (3) the emergency room report identified the marks as bruises or contusions, not scars; (4) while the injury site was sore the evening it was inflicted, the injury did not prevent the boy from sleeping and the victim experienced no pain at the site of the injury the morning after the injury was inflicted and thereafter enjoyed his normal activities without pain or difficulty; (5) the injury required no follow-up medical care or physical therapy; and, (6) the treating physician did not hospitalize the boy. Accordingly, the City failed to prove by sufficient evidence that this type of whipping resulted in serious physical harm or could result in a substantial risk of serious physical harm to the child.

*Wright*, 8th Dist. No. 69517.

**{¶28}** *Enovitch* was a felonious assault case and in that case the court explained:

Case No. 15 MA 0137

Other than Gartman's statement, there was no evidence at trial that the scar above his eye was permanent. There is no evidence as to who told him the scar would not go away or that the person was qualified to make such a determination. The hospital records described his injury as just over 1.5 centimeters in length and as a "burst-type injury, clean, shallow, not particularly jagged." The hospital discharge instructions characterized the injury as "minor." Based upon the evidence presented, we conclude that Gartman's injury did not constitute the serious physical harm required for a felonious assault conviction. Accordingly, Enovitch's second assignment of error is well taken.

*Enovitch*, 8th Dist. No. 72827.

{¶29} Appellant also cites *In re L.J.*, 176 Ohio App.3d 186, 2008-Ohio-1488, 891 N.E.2d 778 (3d Dist.). In that case, the appellate court found the trial court erred as a matter of law when it concluded the child was "abused" under R.C. 2151.031(C) because of corporal punishment. *Id.* at ¶ 45. The appellate court explained the evidence was insufficient to show the corporal punishment was excessive and to show that it created a substantial risk of serious physical harm:

While we certainly share the trial court's sentiment that striking a child with a belt on back of the legs supports a finding that the punishment was excessive, this court has stated that corporal punishment on parts of the body other than the buttocks may be proper and reasonable. *Hart*, 110 Ohio App.3d at 255, 673 N.E.2d 992. In addition, Skinner testified that she had intended to strike J.L. on the butt; however, J.L. moved, which is why she missed. As to the severity, the marks were red but also appeared to be fading and healing within three to four days after the incident, which indicates that the discipline may not have been excessive. Skinner also testified that she did not observe bruises on J.L. after the incident. The record lacks any medical evidence, which would lead one to conclude that the discipline was excessive. No physician testified at the hearing, nor was any medical report admitted into evidence showing that J.L. required

Case No. 15 MA 0137

medical attention as a result of the discipline. In fact, on the day the caseworker discovered the bruises, J.L. was outside playing with his brother.

* * *

We also cannot conclude that the punishment created a substantial risk of serious physical harm as those terms are defined. The evidence presented consisted of Core's testimony and the photographs, which, for the most part, revealed that J.L. was bruised. Our review of the admitted photographic evidence confirms that J.L. was bruised, but bruising alone is not sufficient to constitute serious physical harm. *In re Schuerman*, 74 Ohio App.3d at 532, 599 N.E.2d 728 (trial court could reasonably infer that severe bruising on the buttocks, thighs, and ankles from punishment that was inflicted multiple times for the same misbehavior with a wooden paddle or belt on an eight-year-old girl created a substantial risk of serious physical harm). Other courts have found that punishment much more severe than J.L.'s did not constitute serious physical harm. *See, e.g., Ivey*, 98 Ohio App.3d at 255–256, 648 N.E.2d 519 (bruised left eyelid, bruises, welts, and lacerations caused by a belt whipping on the buttocks and lower legs and a swollen hand was not "serious physical harm"). Again, notably missing from the record is any medical evidence or reports to show that J.L.'s injuries amounted to serious physical harm. On the basis of this record, we cannot conclude that the corporal punishment caused a substantial risk of serious physical harm.

*Id.* at ¶ 41, 44.

{¶30} Appellant also cites a biting case where the parents used biting as a means to punish a nine year old child who bit his brother. *In re Miles*, 9th Dist. No. 01CA0054, 2002-Ohio-2438. In finding insufficient evidence of serious physical harm, the appellate court explained:

Additionally, appellee argues that the bruising is an indication of serious physical harm. In this case, the alleged serious physical harm was "any

physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain." See R.C. 2901.01(A)(5)(e). However, the record does not contain any evidence that acute pain resulted of any lasting duration to result in substantial suffering, or that it lasted for an extended period of time or was intractable.

Although this act may be inappropriate and unwarranted, it did not rise to the level of being an offense of child abuse.

*Id.* at ¶ 12-13.

**{¶31}** These cases are distinguishable from the case at hand; in this case there is evidence of treatment, pain caused from the paddling that lasted over a period of time, and medical testimony from the treating doctor. In all of the cases cited by Appellant the court notes the lack of evidence. However, there is evidence in this case.

**{¶32}** The victim's mother testified it took the wound on the victim's buttocks over two weeks to heal. Trial Tr. 183. The child victim testified it hurt when the Appellant hit him with the paddle board. Trial Tr. 202. As stated above the victim's aunt described the injury as open, bleeding, and scabby. Trial Tr. 216. The victim told her it "hurt to sit and everything." Trial Tr. 216. The picture the aunt took was shown to the jury. Trial Tr. 216; State's Exhibit 1.

**{¶33}** Dr. John Melville from the CAC, whose entire professional career is devoted to child abuse pediatrics, indicated that at a two week follow-up visit, there was evidence of healing but the injury was not gone. Trial Tr. 245, 256-257. After one month of healing, the doctor testified there was further healing but the mark was still present. Trial Tr. 257. Pictures taken at the CAC were admitted into evidence. Trial Tr. 254; State's Exhibit 2-5.

**{¶34}** The doctor was asked what are reasonable physical disciplinary measures. Trial Tr. 260. He explained nobody is opposed to physical discipline in general, but if it is to be administered then it is recommended to be hand to buttocks and that it not leave any marks that would persist for more than 4 to 5 minutes. Trial Tr.

Case No. 15 MA 0137

260. Based on what he observed in this case he opined that the victim's injury was the result of unreasonable physical discipline. Trial Tr. 261.

**{¶35}** In determining whether admittedly excessive corporal punishment caused substantial risk of serious physical harm to the child, the Fourth Appellate District has explained:

> "Discipline methods on a child which leave recognizable bruising and cause pain which lasts beyond the time immediately following an altercation between parent and the child may establish a finding of substantial risk of serious harm." *In re Kristen V.,* 6th Dist. Ottawa No. OT–07–031, 2008–Ohio–2994, ¶ 69. Bruising alone, however, is not sufficient to show that the discipline method created a substantial risk of serious physical harm. *Schuerman*, 74 Ohio App.3d at 532 (stating that "bruising alone is insufficient to establish abuse").

*State v. Neal*, 4th Dist. Nos. 14CA31, 14CA32, 2015-Ohio-5452, ¶ 45.

**{¶36}** Considering the testimony and viewing it in the light most favorable to the state, there was sufficient evidence of serious physical harm and substantial risk of serious physical harm.

**{¶37}** We note the state cites this court to cases upholding child endangering convictions where the victim had extensive bruising on the buttocks, legs and back and where that bruising lasted more than 3 days and up to 7 to 10 days. *State v. Royster*, 2d Dist. No. 25870, 2015-Ohio-3608, ¶ 30-31; *In re Horton*, 10th Dist. No. 03AP-1181, 2004-Ohio-6249, ¶ 27; *State v. Krull*, 154 Ohio App.3d 219, 2003-Ohio-4611, ¶ 20-23 (12th Dist.); *State v. Burdine-Justice*, 125 Ohio App.3d 707, 714-715, 709 N.E.2d 551 (12th Dist.1998). Admittedly, those cases are different from the case at hand in the type of injury sustained. Also, in some of the cases a belt was used instead of a paddle board. However, the abrasion caused by the paddling lasted over two weeks and there is testimony it caused the victim pain over an extended period of time. Furthermore, as the Twelfth Appellate District stated, "The force necessary to create such bruising must have been great, and was not accidental on the part of the perpetrator. Clearly, this amount of corporal punishment was unnecessary and unwarranted." *Burdine-Justice*,

Case No. 15 MA 0137

125 Ohio App.3d at 715. Consequently, although the cases upholding conviction vary from the one before us, the reasoning and the evidence presented in this case indicate they are more akin to the case sub judice than the ones cited by Appellant.

**{¶38}** This court concludes there was sufficient evidence of excessive corporal punishment, serious physical harm, and substantial risk of serious physical harm. This assignment of error is meritless.

### Second Assignment of Error

"The trial court erred and violated Ericulo Henderson's rights to due process and a fair trial when it, against the weight of the evidence, convicted him of child endangering, including the merged child-endangering and felonious-assault findings of guilt."

**{¶39}** When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and all reasonable inferences, and consider the witness credibility. *State v. Dean*, 146 Ohio St.3d 106, 2015–Ohio–4347, 54 N.E.3d 80, ¶151, citing *Thompkins*, 78 Ohio St.3d at 387. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶40}** This assignment of error is also based on the serious physical harm element. Appellant argues the evidence in this case, at most, demonstrated physical harm. He asserts there was no anger involved in the administration of the physical discipline and the injury caused was a "garden-variety" abrasion commonly sustained by 11 year old boys. He also points to the statement made by the victim to Dr. Melville. In the interview, Dr. Melville asked why the victim was there. The victim responded, "Because, it's about my tutor abused me. Ok. Well that's, well that's what my mom told me." State's Exhibit 6. And when asked if the paddling occurred more than once, the victim responded, "Think um . . . more than one time." State's Exhibit 6. Considering his answers, Appellant argues it calls into question whether there was serious physical harm.

**{¶41}** The testimony of the aunt, mother, victim, Appellant, and Dr. Melville were discussed in the first assignment of error. It is noted that during the interview with Dr. Melville, the victim was asked when the paddling last occurred. State's Exhibit 6. The victim indicated he tries not to remember. State's Exhibit 6. The jury got to read this interview and view the pictures of the injury taken by the doctor and the aunt.

**{¶42}** The jury was in the best position to determine if this injury resulted in serious physical harm. The testimony offered by the state indicated it did. During cross-examination Appellant tried to call that opinion into doubt.

**{¶43}** A conviction will only be reversed as against the manifest weight of the evidence if the fact-finder clearly lost its way. *Thompkins* at 387*. This is because the trier of fact is in a better position to determine credibility issues, having viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶44}** This court cannot find the jury clearly lost its way. The aunt testified the victim told her it was painful. Dr. Melville testified that a month after the injury, the injury was still clearly visible. Furthermore, he offered the opinion that the injury was the result of unreasonable physical discipline. Trial Tr. 261. Considering that statement, the aunt's testimony, the victim's testimony, and the pictures of the injury, the jury could conclude the injury amounted to serious physical harm.

**{¶45}** This assignment of error lacks merit.

<u>Third, Fourth and Fifth Assignments of Error</u>

"Ericulo Henderson was deprived of his constitutional right to the effective assistance of counsel when counsel failed to move the court to reduce the felony findings of guilty to misdemeanor findings of guilt through Crim.R. 33(A)(4)."

"Ericulo Henderson was deprived of his constitutional right to the effective assistance of counsel when counsel failed to object to the admission of improper and prejudicial expert opinion testimony."

"Ericulo Henderson was deprived of his constitutional right to the effective assistance of counsel when counsel failed to request jury instructions on lesser-included offenses."

<u>Case No. 15 MA 0137</u>

**{¶46}** These three assignments of error allege claims of ineffective assistance of trial counsel. As such they will be addressed together.

**{¶47}** We review a claim of ineffective assistance of counsel under a two-part test which requires the defendant to demonstrate: (1) trial counsel's performance fell below an objective standard of reasonable representation; and (2) prejudice arose from the deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 141–143, 538 N.E.2d 373 (1989), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Both prongs must be established; if the performance was not deficient, then there is no need to review for prejudice and vice versa. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

**{¶48}** In evaluating the alleged deficiency in performance, our review is highly deferential to counsel's decisions as there is a strong presumption counsel's conduct fell within the wide range of reasonable professional assistance. *Bradley*, 42 Ohio St.3d at 142–143, citing *Strickland*, 466 U.S. at 689. We are to refrain from second-guessing the strategic decisions of trial counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

**{¶49}** To show prejudice, a defendant must prove his lawyer's deficiency was so serious that there is a reasonable probability the result of the proceeding would have been different. *Id.* at 558.

**{¶50}** Appellant claims the trial court was ineffective in three ways: 1) counsel failed to ask the trial court to reduce the felony verdicts to misdemeanor verdicts pursuant to Crim.R. 33; 2) counsel failed to object to Dr. Melville's alleged improper expert testimony; and 3) counsel failed to request a jury instruction on lesser included offenses.

**{¶51}** With the above standard of review in mind, each alleged act of ineffectiveness will be addressed separately.

## 1. Crim.R. 33

**{¶52}** Appellant asserts, pursuant to Crim.R. 33(A)(4), trial counsel should have asked the trial court to modify the verdicts to lesser degree offenses. Appellant contends assault, R.C. 2903.13(A)(C)(1), is the lesser included offense of the felonious assault charge Appellant was found guilty of committing and misdemeanor child

endangering is the lesser included offense of the felony child endangering offenses Appellant was found guilty of committing. He asserts counsel's Crim.R. 29 motion indicates counsel understood the serious physical harm element was critical in the case, however, counsel failed to give the trial court the opportunity to reduce the felony guilty verdicts by utilizing Crim.R. 33(A)(4).

**{¶53}** The state counters asserting there was sufficient evidence Appellant administered excessive punishment causing a substantial risk of serious physical harm to the victim and thus, there was no basis for granting a Crim.R. 33(A)(4) motion. Consequently, prejudice did not result from any alleged deficient performance in failing to utilize Crim.R. 33(A)(4) to reduce the offenses to the lesser included offenses.

Crim.R. 33 is the rule governing motions for new trials. Section (A)(4) states:

(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

* * *

(4) That the verdict is not sustained by sufficient evidence or is contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified;

Crim.R. 33(A)(4).

**{¶54}** Courts have held assault under R.C. 2903.13 is a lesser included offense of felonious assault under R.C. 2903.11. *State v. Underwood*, 2d Dist. No. 26711, 2016-Ohio-1101, ¶ 17 ("The only difference between Felonious Assault under R.C. 2903.11(A)(1), and misdemeanor Assault under R.C. 2903.13(A), is whether the harm caused was serious physical harm, as opposed to non-serious physical harm."); *State v. Addison*, 8th Dist. No. 96514, 2012–Ohio–260, ¶ 34; *State v. Church*, 12th Dist. No. CA2011-04-070, 2012–Ohio–3877, ¶ 23; *State v. Fuller*, 2d Dist. No. 20658, 2005–Ohio–3696, ¶ 14. Some courts have held that misdemeanor child endangering as

enumerated in R.C. 2919.22 is a lesser included offense of felony child endangering as enumerated in R.C. 2929.22, while other courts have indicated it is an inferior degree offense. *State v. Torr*, 10th Dist. No. 00AP-1418, 2002 WL 47040 (Jan. 15, 2002) (dealing with section (A) of R.C. 2929.22 and indicating lesser included offense); *State v. Norman*, 4th Dist. No. 00CA2736, 2001 WL 615332 (May 25, 2001) (dealing with section (B) of R.C. 2919.22 and indicating felony child endangering is an inferior degree offense to its misdemeanor counterpart.). Regardless of whether the offenses are classified as inferior degree or lesser included offenses, it appears Crim.R. 33(A)(4) would apply equally to both types of offenses. Crim.R. 33(A)(4) (stating, "If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein"); *See State v. Mack*, 1st Dist. Nos. C-800456, C-800473, 1981 WL 9941 (Aug. 5, 1981) (implying Crim.R. 33(A)(4) applies to inferior degree and lesser included offense).

{¶55} A review of Crim.R. 33(A)(4) indicates it can be utilized when there is insufficient evidence to sustain the verdict; the trial court may modify the verdict to the lesser included offense or inferior degree offense without granting a new trial. The key here is there must be insufficient evidence to support the verdict. The first assignment of error addressed the sufficiency of the evidence for the felonious assault and felony child endangering verdicts. As this court determined there was sufficient evidence, the trial court had no legal basis to grant a Crim.R. 33(A)(4) motion if it had been requested. It is true counsel did move for a Crim.R 29 motion for acquittal based on the serious physical harm element. This does demonstrate counsel could have moved for a Crim.R. 33(A)(4) modification on the same basis. However, even if the failure to move for a new trial/modification under Crim.R. 33(A)(4) could be considered deficient performance, no prejudice resulted from that alleged failure because the verdicts were supported by sufficient evidence.

{¶56} Consequently, as there is no merit with the first assignment of error, this issue lacks merit.

## 2. Expert Testimony

{¶57} This argument concerns Dr. Melville's trial testimony. Appellant asserts expert testimony is only needed for matters beyond the experience of the ordinary

person. He argues the jury was required to determine if the paddling was excessive. Dr. Melville, when asked if the "injury was the result of unreasonable physical discipline," opined it was. Trial Tr. 260. He contends this was improper expert testimony and counsel was ineffective for failing to object to the testimony.

{¶58} The state asserts Dr. Melville's testimony was proper and cites this court to many cases where an expert was permitted to offer opinions in sexually abused children cases.

{¶59} Evid.R. 702 governs expert testimony and provides:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *

Evid.R. 702.

{¶60} Appellant focuses on section (A); he does not dispute that Dr. Melville's entire professional career is devoted to child abuse pediatrics and his credentials were set forth by the state during direct examination. He focuses instead on whether a paddling was excessive is a matter beyond the knowledge or experience of a lay person.

{¶61} Although the majority of the cases where courts have found an expert's testimony was proper under Evid.R. 702 are sexual abuse cases, some appellate courts have indicated that a doctor's expert testimony is proper in a physical abuse case.

{¶62} For instance, the Third Appellate District was asked to determine whether a doctor was permitted to offer expert testimony on her "child torture" diagnosis. *State v. Hawkey*, 3d Dist. No. 4-14-03, 2016-Ohio-5369, ¶ 6. The state argued the evidence should have been permitted because the use of the term "child torture" had been used

in other cases. *Id.* at ¶ 7. In finding the state's argument unpersuasive, the appellate court stated the cases cited by the state did not involve a diagnosis of "child torture." *Id.* The court then extrapolated, "This does not mean that [the Doctor] could not have testified as an expert as to child abuse. Just that she could not diagnose [the victim] as a victim of "child torture" when such a diagnosis was one she had created and by her own testimony was not widely accepted by the medical community." *Id.* Thus, the statement made by the court acknowledges that a doctor can testify as an expert on physical child abuse.

**{¶63}** Likewise, in a Second Appellate District case, the appellate court indicated a doctor was permitted to testify as an expert in a medical physical abuse case. *In re Z.S.*, 2d Dist. No. 25986, 2014-Ohio-3748, ¶ 50. The mother in that case claimed her children suffered several rare and fatal conditions even though tests confirmed the children did not. *Id.* at ¶ 5. The trial court permitted the doctor to testify as an expert on abuse:

> The record establishes that Dr. Roediger is exceptionally qualified to testify as an expert in the instant case. Dr. Roediger is a pediatrician and child abuse specialist who serves as the medical director for the Department of Child Advocacy at Dayton Children's Hospital. Dr. Roediger's C.V. establishes that she is Board Certified in General Pediatrics and Child Abuse Pediatrics. Dr. Roediger has an extensive educational background and has published articles in several medical journals. We note that her curriculum vitae was admitted without objection from Mother. Certainly, if Mother had actually objected to Dr. Roediger's qualifications as an expert, the objection would have been properly overruled pursuant to Evid. R. 702. *See State v. Hall*, 2d Dist Montgomery No. 25794, 2014–Ohio–2094, ¶ 6 (Dr. Vavul–Roediger is board certified in the fields of general pediatrics and child-abuse pediatrics, has evaluated thousands of children and adolescents for possible sexual abuse or sexual maltreatment, and has testified roughly one hundred times as an expert in general pediatrics and child-abuse pediatrics.)

*Id.* at ¶ 50.

**{¶64}** Thus, there are instances where expert testimony on physical child abuse was permitted. Here, the testimony concerned what type of physical discipline is excessive. The doctor had specialized knowledge on this issue. This could be an area where expert testimony is permissible because of the specialized knowledge doctors who specialize in this area can express to lay persons.

**{¶65}** Furthermore, Evid.R. 702(A) indicates there are two scenarios where an expert can offer an opinion. One is where the witness' testimony "relates to matters beyond the knowledge or experience possessed by lay persons." Evid.R. 702(A). The second is when the expert's witness' testimony "dispels a misconception common among lay persons." Evid.R. 702(A). The amount of physical punishment that is excessive might be something that needs to be dispelled, and thus, the doctor's testimony would be permissible.

**{¶66}** Given the above case law the testimony was admissible. Counsel's failure to object to the Dr. Melville's testimony did not amount to deficient performance. Appellant's arguments to the contrary lack merit.

### 3. Lesser Included Jury Instructions

**{¶67}** This argument is somewhat similar to the argument made regarding Crim.R. 33. Appellant contends counsel was ineffective for failing to request jury instructions on lesser included offenses.

**{¶68}** As explained above, the offenses are either lesser included offense or inferior degree offenses. The test utilized to determine if an instruction should have been given on an inferior degree offense is the same test used to determine if an instruction should have been given on lesser included offense. *State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992).

**{¶69}** The Ohio Supreme Court has explained:

"[A] charge on a lesser included offense is required when the facts warrant it and improper when the facts do not warrant it: 'If the trier of fact could *reasonably* find against the state and for the accused upon one or more of the elements of the crime charged and for the state on the remaining elements, which by themselves would sustain a conviction on a lesser-

included offense, then a charge on the lesser-included offense is required. Conversely, if the jury could not reasonably find against the state on an element of the crime, then a charge on a lesser-included offense is not only not required, but is also improper.'"

*State v. Wine*, 140 Ohio St.3d 409, 2014–Ohio–3948, 18 N.E.3d 1207, ¶ 20.

**{¶70}** Lesser included and/or inferior degree offense instructions are not warranted every time "some evidence" is offered to support the lesser offense. *Shane*, 63 Ohio St.3d at 632.

**{¶71}** Furthermore, a trial counsel's failure to request instructions on lesser included offenses is often a matter of trial strategy and does not per se establish ineffective assistance of counsel. *State v. Griffie*, 74 Ohio St.3d 332, 658 N.E.2d 764 (1996), citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980). Defense counsel's decision to forego an instruction on lesser included offenses, and instead seek an acquittal rather than inviting conviction on a lesser offense, can constitute trial strategy. Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

**{¶72}** In this case, it appears it was trial strategy for counsel to not request an instruction on the lesser included/inferior degree offenses. It appears Appellant was seeking acquittal, not a conviction on a lesser offense.

**{¶73}** Given the presumption of effective representation and the indication that this was trial strategy, Appellant's argument is meritless.

## 4. Conclusion

**{¶74}** Assignments of error three, four and five are without merit.

### Sixth Assignment of Error

"Prosecutorial misconduct deprived Ericulo Henderson of his right to a fair trial and due process."

**{¶75}** This assignment of error is closely related to the fourth assignment of error. Appellant contends the state improperly elicited inadmissible and prejudicial

expert testimony on the ultimate issue of fact. Specifically, the misconduct occurred when the state asked Dr. Melville if the injury the victim sustained was the result of unreasonable physical discipline and he responded that it was. Trial Tr. 261.

**{¶76}** The state, relying on its reply to the fourth assignment of error, counters asserting the questions and remarks were proper.

**{¶77}** The standard of review for prosecutorial misconduct is whether the comments and questions by the prosecution were improper, and, if so, whether they prejudiced appellant's substantial rights. *Treesh*, 90 Ohio St.3d at 480. Prosecutorial misconduct will not provide a basis for reversal unless we find that, based on the entire record, the misconduct deprived the appellant of a fair trial. *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940 (1982).

**{¶78}** Trial counsel did not object to Dr. Melville's testimony, therefore we review for plain error. *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990); Crim.R. 52. Prosecutorial misconduct rises to the level of plain error only if it is clear the defendant would not have been convicted in the absence of the improper comments. *State v. Smith*, 1st Dist. Nos. C-160836, C-160837, 2017-Ohio-8558, ___ N.E.3d ___, ¶ 49.

**{¶79}** As explained above, the question and testimony was proper. Dr. Melville is an expert in child abuse. His testimony concerned whether the injury was from unreasonable physical discipline. He discussed the technical report from the American Academy of Pediatrics (AAP) on physical discipline. Trial Tr. 260. He explained the AAP is not opposed to physical discipline, but physical discipline should be hand to buttocks that does not leave any marks that persist for more than 5 to 10 minutes. Trial Tr. 260-261. It appears his testimony was proper expert testimony and thus, there was no prosecutorial misconduct. Therefore, error, plain or otherwise, did not occur in this case.

**{¶80}** This assignment of error is meritless.

## Seventh Assignment of Error

"The trial court committed plain error when it permitted expert opinion testimony on an ultimate issue of fact that was not beyond the ken of the ordinary person."

**{¶81}** This assignment of error is related to the fourth and sixth assignments of error and concerns Dr. Melville's testimony. Appellant admits he did not object to Dr. Melville's opinion testimony that the injury was the result of unreasonable physical discipline. He contends plain error resulted from the admission of the testimony.

**{¶82}** Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record and must show an error, such as a deviation from a legal rule, that constitutes "an 'obvious' defect in the trial proceedings." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16; *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

**{¶83}** Even if the error is obvious, it must have affected substantial rights, which means the error "must have affected the outcome of the trial." *Barnes*. The Ohio Supreme Court recently clarified the accused is "required to demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333 (2004).

**{¶84}** As explained above, the testimony was permissible. Therefore, there was no plain error. This assignment of error is meritless.

## Eighth Assignment of Error

"The trial court committed plain error when it failed to instruct the jury on the lesser-included offenses of misdemeanor child endangering under R.C. 2919.22(A) and (E)(2)(a), and misdemeanor assault under R.C. 2903.13(A) and (C)(1)."

**{¶85}** This assignment of error is closely related to the first and third assignments of error. Appellant contends plain error occurred when the trial court did not instruct the jury on lesser included or inferior degree offenses. Appellant did not object to the jury instruction or request instructions on lesser included or inferior degree

offenses. Thus, plain error, as set forth in the seventh assignment of error, applies to the review of this assignment of error.

{¶86} Trial courts are required to give the jury all instructions which are "relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Although assault and misdemeanor child endangering are lesser included or inferior degree offenses of their felonious counterparts, instructions on inferior degree or lesser included offenses are only required when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense. *State v. Carter*, 89 Ohio St.3d 593, 600, 734 N.E.2d 345 (2000); *see Wine*, 140 Ohio St.3d 409 at ¶ 34 (a trial court "must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense"). As aforementioned, an instruction on a lesser-included offense is not warranted every time "some evidence" is presented to support the lesser offense. *Shane*, 63 Ohio St.3d at 632; *State v. Grube*, 2013-Ohio-692, 987 N.E.2d 287, ¶ 74 (4th Dist.) ("To require an instruction * * * every time 'some evidence,' however minute, is presented going to a lesser-included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense."). In deciding whether to provide a lesser-included offense instruction, the trial court must consider both the state's evidence and the defense's evidence, and it must view the evidence in the light most favorable to the defendant. *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 37. The court must find "sufficient evidence" to allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser-included (or inferior degree) offense. *State v. Noor*, 10th Dist. No. 13AP-165, 2014-Ohio-3397, ¶ 84. "Thus, in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation (such that a jury could both reasonably acquit defendant of felonious assault and convict defendant of aggravated assault), an instruction on aggravated assault * * * *must* be given." (Emphasis sic.) *State v. Deem*, 40 Ohio St.3d 205, 211, 533 N.E.2d 294 (1988),

clarified in part on other grounds by *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, ¶ 4–5, 911 N.E.2d 889.

{¶87} As explained in the first and third assignments of error, there was sufficient evidence to sustain the verdict. Therefore, the instructions on the lesser included or inferior degree offenses were not warranted. This assignment of error is meritless.

### Ninth Assignment of Error

"Ericulo Henderson's sentence is not supported by competent, credible evidence in the record."

{¶88} At sentencing, the state agreed all offenses merged. Sentencing Tr. 3. It elected to have Appellant sentenced on second-degree felony child endangering. The trial court imposed an eight year sentence, the maximum allowable by law. Sentencing Tr. 11-13; 7/24/15 J.E. In imposing this sentence the trial court considered the factors in R.C. 2929.11 and R.C. 2929.12. Sentencing Tr. 11-12; 7/24/15 J.E. It then stated this was the worst form of the offense, there was a great likelihood of recidivism, and the shortest prison term would demean the seriousness of the offense. Sentencing Tr. 17.

{¶89} Appellant contends the record does not support the imposition of an eight year maximum sentence or those findings. He argues this sentence is disproportionate to similar crimes by similar offenders and refers to the cases cited in his sufficiency of the evidence argument. The state counters arguing the trial court has total discretion in imposing a sentence within the applicable range and we have no authority to review it.

{¶90} Appellate courts review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. Under R.C. 2953.08(G)(2) an "appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* A sentencing court must consider the purposes and principles of sentencing in accordance with R.C. 2929.11; the seriousness and recidivism factors set forth in R.C. 2929.12; and the appropriate consecutive sentence requirements enumerated in R.C. 2929.14(C)(4).

Case No. 15 MA 0137

{¶91} In this case, we only have one sentence, so the consecutive sentence requirements are not at issue.

{¶92} R.C. 2929.11 enumerates the overriding purpose of felony sentencing:

A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

R.C. 2929.11(A).

{¶93} The trial court clearly indicated it considered this statute. Sentencing Tr. 11, 12-13; 7/24/15 J.E. At sentencing the court stated:

The court finds that defendant is not amendable to community control and that prison is the only sanction consistent with the principles and purposes of sentencing. The court also finds that using the minimum sanction would not accomplish the overriding purposes of felony sentencing without imposing an unnecessary burden on the state or local government resources.

Sentencing Tr. 12-13.

{¶94} R.C. 2929.12 sets forth factors to consider in determining the appropriate sentence. The statute contains a nonexclusive list of factors that render an offender's conduct more serious than conduct normally constituting the offense and factors that render an offender's conduct less serious than conduct normally constituting the offense. R.C. 2929.12(B)(C). Likewise, the statute sets forth a nonexclusive list of factors indicating the offender is more likely to commit future crimes and factors indicating recidivism is less likely. R.C. 2929.12(D)(E).

**{¶95}** The trial court indicated it considered those factors. Sentencing Tr. 11-12; 7/24/15 J.E. At the sentencing hearing, the trial court discussed the seriousness factors:

> The court finds that the following seriousness factors were shown by the evidence in this case: Number one, the physical or mental injuries sustained by the victim was exacerbated because of the physical condition and age of the victim; two, the victim suffered severe physical harm; three, the offender held a position of trust in the community; four, the offender's occupation obligated him to prevent the offense or bring others committing to justice; five, the offender's professional occupation as a tutor and educator was used to facilitate the offense; six, the offender's relationship with the victim facilitated the offense.
>
> So of the nine seriousness factors that I'm to consider with regard to sentencing, the evidence showed that six of them apply in this case.
>
> * * *
>
> We are back on the record. As I left the courtroom, it occurred to me that I did not put on the record my rationale with regard to the maximum sentence and I need to do that now. I do find that because of the seriousness factors that I listed earlier that this is the worst form of the offense, that it creates the greatest likelihood of future crimes and that the shortest sentence would demean the seriousness of this offense.

Sentencing Tr. 11-12, 17.

**{¶96}** At the sentencing hearing, the trial court did not discuss recidivism factors, however, a PSI was prepared and the record indicates Appellant is a middle aged man with no criminal record.

<u>Case No. 15 MA 0137</u>

**{¶97}** The sentence issued in this case does fall within the sentencing range set forth in R.C. 2929.14(A)(2); the applicable prison terms for second-degree felonies are two, three, four, five, six, seven, or eight years.

**{¶98}** Given all the above and the standard of review, we cannot conclude the sentence is clearly and convincingly contrary to law. The record indicates the trial court considered all the required statutes and issued a sentence within the applicable range. Furthermore, the trial court's application of the seriousness factors corresponds with the facts of the case. The victim was young, 11 years old, and Appellant was the victim's tutor and held a position of trust. Although this court would not have imposed the maximum sentence in this case, given our limited standard of review and the trial court's reasoning, there is no basis for this court to conclude the sentence is contrary to law. We are required to afford deference to the trial court's broad discretion in making sentencing decisions; trial courts have great latitude and discretion in formulating the appropriate sentence. *State v. Rahab*, 150 Ohio St.3d 152, 2017–Ohio–1401, 80 N.E.3d 431, ¶ 10. This assignment of error lacks merit.

## Conclusion

**{¶99}** All assignments of error lack merit. The conviction is affirmed.

Donofrio, J., concurs.

Waite, J., concurs.

Case No. 15 MA 0137

[Cite as *State v. Henderson*, 2018-Ohio-2816.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.


## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**