[Cite as *State v. Smith*, 2023-Ohio-3973.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 112233 |
| v. | : | |
| ALYSIA SMITH, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 2, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-639730-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Michael Timms, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Alysia Smith ("Smith"), appeals from her conviction following a jury trial. She raises the following assignments of error for review:

1. Appellant's conviction is against the manifest weight of the evidence because the record establishes that appellant acted in self-defense and the convictions are otherwise against the manifest weight of the evidence.

2. The court erred in denying appellant's motion to dismiss in violation of appellant's due process rights under Article I, Section 10 of the Ohio Constitution and under the Fifth and Fourteenth Amendments to the United States Constitution.

3. It was plain error and the appellant's state and federal constitutional right to the effective assistance of counsel was violated when evidence was admitted without objection in violation of evidence rules 401, 402, 403, and 404.

4. Appellant's sentence is contrary to law because the imposition of an indefinite sentence is unconstitutional.

{¶ 2} After careful review of the record and relevant case law, we affirm Smith's conviction and sentence.

## I. Procedural and Factual History

{¶ 3} On May 14, 2019, Smith was named in a single-count indictment, charging her with felonious assault in violation of R.C. 2903.11(A)(1). The indictment stemmed from allegations that Smith physically assaulted her coworker, A.G., on May 3, 2019. Following multiple continuances, the matter proceeded to a jury trial on October 24, 2022.

{¶ 4} At trial, A.G. testified that on May 3, 2019, she was working as a dancer at the Hustler Club in Cleveland, Ohio. During her shift, A.G. performed a private dance with an unidentified male in exchange for $150. A.G. testified that the male became upset with her when she refused his attempts to engage in further sexual conduct in the private room. The male began calling A.G. names and later

complained about her to his friend, Smith, who was also working as a dancer at the Hustler Club that evening.

{¶ 5} At the conclusion of her shift, A.G. was confronted by Smith in the employee's locker room. A.G. testified that Smith was "yelling and screaming," and threatened to "kick [her] ass" for "taking advantage" of Smith's friend. (Tr. 188.) A.G. described the events that transpired as follows:

> So everyone in the locker room went silent. Said shut up, stop yelling at her, and leave her alone and [Smith] wouldn't. She comes around the corner and starts yelling and screaming, you fucking bitch, you cannot — you took advantage of him. That was my money for drugs — all this shit.
>
> * * *
>
> [Smith] says that was my money you took. And I'm, like, I ignored it for a few minutes. I just kept my head down and she wouldn't stop. I had to leave the locker room and I knew I had to walk past her and she just wouldn't shut up. I'm, like, everyone kept telling her stop, Alysia, leave her alone because they knew I'm not like that. I don't fight or anything. * * * And then she — I kind of poked my head around the corner and I said that's what we do for men here, we dance for them, and they pay us. I didn't steal anything. And then she charged at me.
>
> And then all I remember was trying to block my face because I had just gotten a rhinoplasty, a nose job, four months prior, which I saved up a long time for. * * * I couldn't believe, like, what the hell is going on? * * * I was protecting my face. She kept trying to — she was just, like, swinging and kicking and I — I never fought anyone. I was trying to protect my face and trying to push her away and screaming at her to stop, leave me alone, and she wouldn't.
>
> The other girls jumped in and pulled her off me and both of us had our arms to our sides by the other girls holding us back. And then all of a sudden, she gets her arm out of the grip and jacks me in the face while my arms are to my side. I just hear my nose crack. * * * There's blood everywhere. And, yeah, that's it.

(Tr. 189-191.)

{¶ 6} Following the altercation, A.G. called 911 to report the assault. The police arrived at the scene and took pictures of A.G.'s face and the injury to her nose. A.G. later drove herself to MetroHealth Hospital, where it was determined that she had a fractured nasal bone.

{¶ 7} The incident was captured by the club's surveillance monitoring system in its entirety. The video, marked state's exhibit No. 1, was played for the jury while A.G. narrated the events as they transpired. In relevant part, A.G. maintained that she did not initiate, provoke, or otherwise participate in the physical altercation with Smith. Rather, A.G. testified that she was only concerned with protecting her face, stating, "I didn't want to hit her. I didn't want to fight her. I wanted it to stop. I didn't want anyone to get hurt." (Tr. 196.)

{¶ 8} On cross-examination, A.G. admitted that her medical records indicated that she tested positive for ETOH (alcohol). She maintained, however, that she was not impaired at the time of the altercation. Regarding the physical altercation, A.G. reiterated that she did not wish to fight Smith and was attempting to defuse the situation. A.G. clarified that although she was primarily concerned with the single punch that broke her nose, Smith also pulled her hair, struck her on the side of the head, and kicked her during the altercation. Finally, A.G. denied defense counsel's suggestion that she initiated the physical confrontation by "coming at [Smith]" while raising her hands in a "threatening" manner. A.G. explained that she was "verbally telling [Smith] to stop" and "was holding [her] hands in the air kind of exasperated. I wanted to leave." (Tr. 244, 248.)

{¶ 9} Detective Bruce Garner ("Det. Garner") of the Cleveland Police Department testified that he was assigned to investigate the allegations of assault levied against Smith in this matter. In the course of his investigation, Det. Garner conferred with A.G., gained access to A.G.'s medical records, obtained a copy of the surveillance video from the Hustler Club, and interviewed Smith while she was in county jail. During the interview, which was captured by Det. Garner's body camera, Smith indicated that she did not recall the physical altercation with A.G. and did not even know A.G.'s name. (Tr. 291.)

{¶ 10} At the conclusion of the state's case, Smith made a motion for acquittal pursuant to Crim.R. 29, which the trial court denied.

{¶ 11} Smith testified on her own behalf. She confirmed that she was working as a dancer at the Hustler Club on May 3, 2019, and that she was familiar with the male A.G. had approached in the club that evening. Smith maintained that the unidentified male alleged that A.G. had stolen money from him during a private dance. Smith testified that when she confronted A.G. in the employee locker room, A.G. denied stealing money from the male. Smith admitted that she did not believe A.G. and called her a "money hungry * * * B word." (Tr. 303.) According to Smith, the verbal argument escalated into a physical dispute once A.G. came around the corner of the locker room and "charged at [her]" while holding something in her hand. (Tr. 304.) Smith testified that she had no intention of fighting A.G. and that she was acting in self-defense when she first kicked A.G. She explained her reaction as follows:

I reacted. I was afraid. I mean, this is my first fight — outside of martial arts. We're taught self-defense and discipline. That's the first time I had to use it and you cannot be the aggressor.

(Tr. 311.) Smith maintained that she unknowingly made contact with A.G.'s nose while she was attempting to shove A.G. away from her while they were on the ground.

{¶ 12} At the close of the defense's case, Smith renewed her motion for acquittal, which the trial court denied.

{¶ 13} On October 26, 2022, the jury found Smith guilty of felonious assault, a felony of the second degree. Over defense counsel's objection, Smith was sentenced to an indefinite prison term of 4 to 6 years pursuant to the Reagan Tokes Law, effective March 22, 2019.

{¶ 14} Smith now appeals from her conviction and sentence.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 15} We address Smith's assignments of error out of order for the ease of discussion. In the second assignment of error, Smith argues the trial court erred when it denied her motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to support her conviction. Smith contends that the evidence "fails to establish beyond a reasonable doubt that [she] possessed the required mental state that is a necessary element of the conviction for felonious assault."

{¶ 16} Crim.R. 29(A) provides that a court "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." "Because a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.'" *Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-2685, ¶ 37, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 17} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 18} "'Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value.'" *State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 35 (8th Dist.), quoting *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18. Although circumstantial evidence and direct evidence have obvious differences, those differences are irrelevant to the probative value of the evidence, and

circumstantial evidence carries the same weight as direct evidence. *Id.*, citing *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Further, circumstantial evidence is not only sufficient, ""but may also be more certain, satisfying, and persuasive than direct evidence."" *Id.* at ¶ 36, quoting *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶ 19} As stated, Smith was convicted of felonious assault in violation of R.C. 2903.11(A)(1). The statute provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause serious physical harm to another * * *."

{¶ 20} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 21} Serious physical harm is defined in R.C. 2901.01(A)(5) as any of the following:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

**{¶ 22}** Although the definition of serious physical harm is given in the statute, "'[t]he degree of harm that rises to the level of "serious" physical harm is not an exact science, particularly when the definition includes such terms as "substantial," "temporary," "acute," and "prolonged."'" *State v. Montgomery*, 8th Dist. Cuyahoga No. 102043, 2015-Ohio-2158, ¶ 11, quoting *State v. Miller*, 8th Dist. Cuyahoga No. 98574, 2013-Ohio-1651, ¶ 18, quoting *State v. Irwin*, 7th Dist. Mahoning No. 06MA20, 2007-Ohio-4996, ¶ 37. Because the element of serious physical harm is fact dependent, it must be reviewed on a case-by-case basis and under the totality of the circumstances presented therein.

**{¶ 23}** This court has recognized "that the element of serious physical harm is satisfied when the evidence shows that the victim sustained injuries requiring medical treatment, including stitches." *State v. Williams*, 8th Dist. Cuyahoga No. 98210, 2013-Ohio-573, ¶ 19. Similarly, Ohio courts have repeatedly stated that "where the assault causes a bone fracture, the element of serious physical harm is met." *Montgomery* at ¶ 13, quoting *State v. Lee*, 8th Dist. Cuyahoga No. 82326, 2003-Ohio-5640, ¶ 24, citing *State v. Thomas*, 9th Dist. Summit No. 18881, 1999 Ohio App. LEXIS 489 (Feb. 19, 1999); *State v. Childers*, 4th Dist. Jackson No. 96 CA 785, 1997 Ohio App. LEXIS 2599 (June 11, 1997); *State v. Manning*, 4th Dist. Adams No. 94 CA 582, 1995 Ohio App. LEXIS 2311 (May 26, 1995). *See also State v. Noah*, 8th Dist. Cuyahoga No. 110664, 2022-Ohio-1315, ¶ 10 ("a broken nose is sufficient

to constitute serious physical harm"), citing *State v. Daniels*, 14 Ohio App.3d 41, 469 N.E.2d 1338 (1st Dist.1984) (evidence of broken nose and swollen face sufficient to support the element of "serious physical harm.").

{¶ 24} After careful review of the record, we find that the state presented sufficient evidence to support Smith's felonious-assault conviction. In this case, A.G. testified that Smith started an unprovoked verbal altercation that became physical once A.G. made a statement concerning her interaction with Smith's male acquaintance. According to A.G., Smith kicked her and then "took [her] by the head and threw [her] to the ground." (Tr. 196.) Smith then pulled A.G.'s hair and "kept pummeling [her] back" while A.G. attempted to "protect [her] head." (Tr. 197.) A.G. explained that once she and Smith were separated, Smith broke free and punched A.G. "in the face while [her] arms were to [her] side." (Tr. 190.) A.G. stated that she heard her nose crack, and immediately felt like her face "was on fire." (Tr. 191.) A.G. explained that her nose was swollen, bleeding excessively, and "twisted to the left." (Tr. 204.)

{¶ 25} A.G.'s testimony was corroborated by surveillance video footage taken from inside the club's employee locker room. In relevant part, the video depicts Smith verbally accosting A.G. while A.G. was getting dressed after her shift. The confrontation remained verbal until A.G. stood up from her chair and turned towards Smith. At that time, Smith immediately "charged at [A.G.]" and kicked her in the midsection. (Tr. 189.) A.G. and Smith then engaged in a tussle that caused them each to fall to the ground. When the two women were separated by their

colleagues and the confrontation ended, A.G. was bleeding from her nose. A.G. subsequently sought emergency medical treatment and was diagnosed with a fractured nasal bone.

{¶ 26} Viewing the evidence in the light most favorable to the state, we find a reasonable tier of fact could find, beyond a reasonable doubt, that Smith knowingly struck A.G. in the face, causing serious physical harm, i.e., physical harm that "involves some temporary, serious disfigurement." R.C. 2901.01(A)(5). Contrary to Smith's position on appeal, the trier of fact was justified in inferring that Smith was aware her conduct would probably cause serious physical harm when she struck A.G. in the face while she was in a defenseless position.

{¶ 27} The second assignment of error is overruled.

## B.  Manifest Weight of the Evidence

{¶ 28} In the first assignment of error, Smith argues her conviction is against the manifest weight of the evidence. She contends "that the jury's conclusion that the state met its burden of persuasion and had disproved the affirmative defense of self-defense beyond a reasonable doubt [is] against the manifest weight of the evidence."

{¶ 29} Under Ohio law, a person is permitted to act in self-defense. R.C. 2901.05(B)(1). In cases involving the use of nondeadly force, the affirmative defense of self-defense applies where:

> (1) the defendant was not at fault in creating the situation giving rise to the affray in which the use of force occurred, (2) the defendant had reasonable grounds to believe and an honest belief, even if mistaken, that he or she was in imminent danger of bodily harm and (3) the only

means to protect himself or herself from such danger was the use of force not likely to cause death or great bodily harm, i.e., the defendant did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm.

*State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 43 (8th Dist.), citing Ohio Jury Instructions, CR Section 421.19 (Rev. Apr. 13, 2019); *State v. Kilbane*, 8th Dist. Cuyahoga No. 106753, 2019-Ohio-863, ¶ 13; *State v. Hunt*, 8th Dist. Cuyahoga No. 94534, 2011-Ohio-92, ¶ 20; *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, ¶ 19 (8th Dist.); *State v. Chavez*, 3d Dist. Seneca Nos. 13-19-05, 13-19-06, and 13-19-07, 2020-Ohio-426, ¶ 40. There is no duty to retreat to avoid the danger in cases involving the use of nondeadly force, even if retreat is possible. *Welms* at ¶ 19; *Chavez* at ¶ 40.

{¶ 30} Pursuant to R.C. 2901.05(B)(1), if evidence is presented at trial "that tends to support that the accused person used the force in self-defense" then "the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense." In other words, if the accused satisfies the burden of presenting evidence that tends to support that they acted in self-defense, the burden shifts to the state to disprove at least one of the elements above. *Jacinto* at ¶ 46. The state's burden of persuasion is subject to a manifest-weight review on appeal. *State v. Smith*, 8th Dist. Cuyahoga No. 111593, 2023-Ohio-1296, ¶ 52, citing *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 27.

{¶ 31} When considering a defendant's claim that a conviction is against the manifest weight of the evidence, the appellate court functions as a "thirteenth juror"

and may disagree "with the factfinder's resolution of * * * conflicting testimony." *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The appellate court examines the entire record, weighs the evidence and all reasonable inferences that may be drawn therefrom, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶ 32} In addition, a trier of fact is free to believe all, some, or none of the testimony of each witness testifying at trial. *State v. Jones*, 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 85; *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 100. Thus, "[a] conviction is not against the manifest weight of the evidence simply because the jury believed the testimony of the state's witnesses and disbelieved the defendant." *State v. Jones*, 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 85.

{¶ 33} On appeal, Smith suggests that the greater weight of the evidence demonstrates that she acted in self-defense during the physical confrontation with A.G. on May 3, 2019. Alternatively, Smith contends that the jury clearly lost its way in finding her guilty of felonious assault because "there is no evidence that she acted

knowingly or with any specific purpose to cause injury or harm to [A.G]." Smith asserts that she was merely attempting to push A.G. away and did not intend to strike her nose.

{¶ 34} We disagree with Smith's interpretation of the relevant evidence adduced at trial. Viewing the record in its entirety, we cannot say the jury lost its way when it negated Smith's self-defense claim and found any one of the following to be true: (1) Smith was at fault in creating the situation giving rise to the affray, or (2) Smith did not have a bona fide belief that she was in imminent danger of bodily harm, or (3) Smith's only means to protect herself from such danger was the use of nondeadly force. In this case, the jury heard directly from Smith and A.G. concerning their roles in the physical altercation and the events immediately preceding and following the incident. The altercation was captured by the club's surveillance system in its entirety, and the jury was capable of comparing the video evidence to the conflicting testimony offered by A.G. and Smith. As previously discussed, the video footage captured the parties' movements and demonstrated that Smith not only escalated the situation by verbally threatening A.G., but further initiated the physical altercation by closing the space between her and A.G. and kicking A.G. in the midsection. A.G. testified that during the scuffle that then ensued, Smith deliberately struck her in the face while she was in a defenseless position, resulting in a fractured nasal bone. Under these circumstances, the jury's determination that the state's evidence was more credible than Smith's was not against the manifest weight of the evidence and did not result in a miscarriage of

justice. This is not the exceptional case in which the evidence weighs heavily against Smith's conviction for felonious assault.

{¶ 35} Smith's first assignment of error is overruled.

## C. Admission of Evidence

{¶ 36} In the third assignment of error, Smith argues defense counsel rendered ineffective assistance of counsel by failing to object to the state's introduction of irrelevant, other-acts evidence. Alternatively, Smith contends that the trial court committed plain error by admitting the disputed testimony into evidence.

{¶ 37} A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As a general matter, to establish ineffective assistance of counsel, a defendant must demonstrate (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation; and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the outcome of the proceeding would have been different. *Id.* at 687-688, 694; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 38} In Ohio, a properly licensed attorney is presumed to be competent. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Because there are

"countless ways to provide effective assistance in any given case," the court must give great deference to counsel's performance and "indulge a strong presumption" that counsel's performance "falls within the wide range of reasonable professional assistance." *Strickland* at 689; *see also State v. Powell*, 2019-Ohio-4345, 134 N.E.3d 1270, ¶ 69 (8th Dist.) ("'A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"), quoting *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69.

{¶ 39} In this case, Smith's evidentiary arguments rely on the introduction of the following evidence (1) testimony that Smith "was out of her mind on drugs and drinking," (2) testimony that Smith is a "wild uncaged animal," (3) testimony that Smith is "unhinged," and (4) testimony that Smith previously engaged in sex in exchange for money. (Tr. 196, 198-199, 248.) Smith contends that the foregoing testimony was irrelevant and otherwise constituted unsubstantiated other-acts evidence.

{¶ 40} Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." In general, "[e]vidence that [a defendant] committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15. However, evidence of other crimes,

wrongs, or acts may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).

{¶ 41} To determine whether other-acts evidence is admissible, the court considers whether (1) the other-acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence (Evid.R. 401); (2) the evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B); and (3) the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice. *Williams* at ¶ 20.

{¶ 42} The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law. *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22. The court is precluded from admitting improper character evidence under Evid.R. 404(B), but it has discretion to allow other-acts evidence that is admissible for a permissible purpose. *Hartman* at ¶ 22, citing *Williams* at ¶ 17.

{¶ 43} Viewing the challenged testimony in context, we are unable to conclude that defense counsel rendered ineffective assistance of counsel by failing to raise timely objections to the state's evidence. Preliminarily, we note that defense counsel did, in fact, successfully object to A.G.'s speculation that Smith was "out of

her mind on drugs and drinking." (Tr. 196-197.) The court later instructed the jury that disregarded answers do not constitute evidence and that the jury is not to speculate as to why the court sustained an objection raised by either side. (Tr. 353.) Counsel was not deficient in this instance.

{¶ 44} With respect to A.G.'s testimony that (1) Smith met the stereotype of an unhinged dancer, and (2) she learned from the unidentified male that "[Smith] gets money from him for sex," we note that these statements were elicited by defense counsel on cross-examination. (Tr. 248.) It is apparent that defense counsel raised the foregoing issues on cross-examination in an attempt to emphasize that despite A.G.'s generally unfavorable opinions of exotic dancers, she too was also employed as a dancer at the Hustler Club at the time of the incident. We have held that "trial counsel's decision to cross-examine a witness and the extent of such cross-examination are tactical matters." *State v. Russell*, 2d Dist. Montgomery No. 21458, 2007-Ohio-137, ¶ 55. "A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy." *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 56 (2d Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *Id.*, citing *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 45} Nevertheless, even if this court were to construe A.G.'s isolated reference to Smith's alleged sexual practices at the club and her characterization of

Smith as an intoxicated, unhinged, wild animal as irrelevant or otherwise inadmissible other-acts evidence, we are unable to conclude that, but for the challenged testimony, the outcome of Smith's trial clearly would have been different. While A.G.'s unprompted insinuations about Smith's character were unnecessary and, perhaps, inappropriate, A.G.'s statements did not negate the evidence demonstrating that Smith initiated a fight with A.G. over money that resulted in A.G. suffering a broken nose. Under these circumstances, Smith has failed to demonstrate the requisite level of prejudice to establish an ineffective assistance of counsel claim. For these same reasons, we reject Smith's alternative position that the trial court committed plain error by admitting the disputed portions of A.G.'s testimony.

{¶ 46} The third assignment of error is overruled.

### D. The Reagan Tokes Law

{¶ 47} In this fourth assignment of error, Smith argues the trial court erred in sentencing her to an indefinite sentence under the Reagan Tokes Law. Smith contends that the Reagan Tokes Law violates constitutional guarantees of both substantive and procedural due process, the separation-of-powers doctrine, and the right to trial by jury. In *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, the Ohio Supreme Court upheld the constitutionality of the Reagan Tokes Law. The arguments presented in this case do not present novel issues or any new theory challenging the constitutional validity of any aspect of the Reagan Tokes Law left unaddressed by the Ohio Supreme Court's decision in *Hacker*.

{¶ 48} The fourth assignment of error is overruled.

{¶ 49} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
SEAN C. GALLAGHER, J., CONCUR