[Cite as *State v. Fadel*, 2024-Ohio-730.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                    :

    Plaintiff-Appellee,        :

                                No. 112725

    v.                              :

ALLISON FADEL,                    :

    Defendant-Appellant.       :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 29, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-666719-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Halie Turigliatti, Assistant Prosecuting Attorney, *for appellee*.

Edward M. Heindel, *for appellant*.

LISA B. FORBES, J.:

{¶ 1} Allison Fadel ("Fadel") appeals the trial court's journal entry convicting her of felonious assault. After reviewing the facts of the case and the pertinent law, we affirm the trial court's decision.

## I.   Facts and Procedural History

{¶ 2}   This case concerns a fight on November 7, 2022, in which Fadel, her sister Ashley Gaines ("Gaines"), Sheena Walcott ("Sheena"), and Shawnee Walcott ("Shawnee") were involved.

{¶ 3}   Following a jury trial, Fadel was found guilty of one count of felonious assault against Sheena, a second-degree felony in violation of R.C. 2903.11(A)(1) and of one count of felonious assault against Shawnee, a second-degree felony in violation of R.C. 2903.11(A)(1).  The trial court sentenced Fadel to four-to-six years in prison on each count, to run concurrently.

{¶ 4}   It is from this order that Fadel appeals raising the following assignments of error:

> 1. The defendant was denied her right to the effective assistance of counsel because counsel did not request a jury instruction on the inferior offense of aggravated assault.

> 2. The trial court committed plain error by not instructing the jury on the inferior offense of aggravated assault[.]

> 3. The convictions were not supported by sufficient evidence.

> 4. The convictions were against the manifest weight of the evidence.

## II.   Trial Testimony

{¶ 5}   The jury heard from five witnesses: Sheena, Shawnee, Detective Timothy Hannon ("Det. Hannon"), Fadel, and Gaines.  The following pertinent testimony and evidence was presented.

## A. Sheena Walcott

{¶ 6} On November 7, 2021, Sheena and Shawnee went to a birthday party at the Ken Ferguson Party Center. The two arrived at approximately 1 a.m.

{¶ 7} Sheena knew Fadel as an "acquaintance," and described their relationship as "friendly." She would often see Fadel and Gaines at reggae parties. According to Sheena, her relationship with Fadel became less friendly a few months prior to November 7, 2021.

{¶ 8} Sheena claimed that while she and Shawnee were at the party, they "felt like [they] had to watch [their] backs." Throughout the evening, Fadel and Gaines were "at the back by the speakers," so she and Shawnee decided to "go on the whole other side of the room," by the DJ on the dancefloor. Shawnee became tired and did not want to dance, so she stepped to the side. At that point, according to Sheena, Fadel "walks up to the dance floor. I don't know where [Gaines] is at this point in time. And then [Fadel's] pointing extremely rowdy and violently, and, like, maybe she's just dancing to the song and then I'm, like, no, she's pointing at me. So I, like, walk away as fast as I can. Next thing you know, I'm knocked out."

{¶ 9} Sheena explained that while she "was walking away, [Fadel] struck [her] from behind and the impact went in [her] left eye. And it went on for several minutes in that same left eye only and then when she missed, [Sheena] got hit in [her] temple a couple times on the top of [her] head." Sheena stated that during the altercation she suffered from a "serrated cut [that] was cut with a specific tool."

{¶ 10} Asked whether it would be accurate to say that Sheena "ran up behind * * * Fadel and bumped her in the back to start the fight," Sheena responded, "no."

{¶ 11} According to Sheena, the fight occurred at approximately 2:30 a.m. just before she and Shawnee were preparing to leave. Sheena estimated the fight lasted between six and eight minutes.

{¶ 12} Two videos of a 12-second portion of the fight were played for the jury and admitted into evidence. Both videos depicted the same events, but one was played at normal speed and the other was slowed. Sheena identified herself in the videos; she is shown lying on the floor with Fadel standing over her. Fadel is wearing two arm braces and is hitting Sheena repeatedly.

{¶ 13} Sheena described herself as "totally out of it" after the fight. She explained that she felt "star dazed" and not herself. Her face and eye hurt, and according to Sheena, she "looked deformed."

{¶ 14} Sheena went to the emergency room at Hillcrest Hospital the following day. Sheena identified the following injuries resulting from the fight: broken bones including "left eye, * * * left nose, * * * scapula, and the bottom of [her] chin," "nerve damage to the trigeminal nerve, * * * which damaged [her] whole face," a concussion, and cuts on her leg. Photos Sheena took depicting her physical injuries were admitted into evidence.

{¶ 15} After her visit to the emergency room, Sheena saw two eye doctors, a neurologist, an ear, nose, and throat doctor, a maxillofacial specialist, and a therapist for PTSD. Sheena explained that she saw the neurologist due to numbness

in her lips and half of her face as well as nerve pain.  As a result of the incident, Sheena could not move the muscles around her mouth, and at the time of trial she had not fully regained the ability to do so.

### B. Shawnee Walcott

{¶ 16} Shawnee testified that after she saw Fadel pointing her finger at Sheena, she "felt someone hitting [her] on the right side of [her] face."  According to Shawnee, Gaines was the person hitting her.  Shawnee testified that it felt like she was getting hit with a hammer and that "it sounded like a dumbbell hitting the wood floor * * *."  Gaines "definitely had metal" with which she was hitting Shawnee and that instrument was serrated.  Shawnee was "cut with something that has the exact same pattern as [Sheena], so [Fadel and Gaines] had the exact same tool."  "[T]hey planned it, premeditated it, and plotted it and that's the reason we have the exact same injuries."

{¶ 17} Shawnee identified herself in the two videos of the fight.  She is seen lying on the ground with Gaines standing over her; Gaines is hitting and kicking Shawnee.

{¶ 18} Shawnee suffered cuts on her fingertips, upper lip, and leg.  Several of these cuts took up to three months to heal. Additionally, Shawnee's eye was swollen shut and two of her teeth were chipped as a result of the incident.  At the time of trial, Shawnee was still seeing doctors for her injuries, she occasionally sees a glare in her eye, has a scar on her left leg, and suffers from PTSD.

## C. Det. Timothy Hannon

**{¶ 19}** Det. Hannon testified that Detective Nykolai Przybylaski ("Det. Przybylaski") was originally assigned the Fadel investigation, but the investigation was reassigned to Det. Hannon when Det. Przybylaski retired.

**{¶ 20}** As part of the investigation, a search warrant was issued for Fadel's Instagram account records from November 6, 2021, through December 6, 2021. Instagram's parent company, Meta, certified the records, which were admitted into evidence. According to Det. Hanon, the Instagram records showed that Fadel sent various messages including the following:

> Beat these h**s a** in the club. * * * They pressing charges and they started it.

> But the bi*** I was telling you been fu***** with me came and bumped me on badmon tune and I snapped. I snatched my own wig off cause it was hanging in my face and I could see. I told them I box in real life. No hair pulling.

> This girl poke her fingers in my face and I took off on her.

> She pushed my arm and I lost it.

> She touched me and I lost it.

> As I was telling Sheena again not to touch me, I saw her sister coming at me in my side-view so I swung on both of 'em.

> I broke my phone Saturday beating bi*** up. These girls that be at all the African and Jamaican parties and can't dance be fu**** with us and it been going on for weeks. But way too classy to be fighting so we let them do whatever they do. And because they used to be my friends and I can't hurt people I love until Saturday, I just got tired. She kept fu***** with me walking past me and then she pushed my shoulder. So I told don't be playing with me because I will be you're a** tonight. And she put her finger in my face so I choked her and I saw her sister coming out of the corner of my eye, so I punched her. So I beat the one I was

already choking.  My wig was in my way. I snatched it off so I could see her.  That's how bad I been waiting on this.  Den security come break us up and the song don't need security in the club bi***, I thought you was a thug came on and me and my sister started dancing and laughing and pointing at them.

### D.  Allison Fadel

{¶ 21} According to Fadel, she and Gaines arrived around 11 p.m.  At around 1 a.m., Fadel stated that she was "throwing money on the DJ" when Sheena pushed her.  This was the first time she had seen Sheena or Shawnee that evening.  After the push, Fadel "turned to tell [Sheena] not to touch [her] again."  Fadel described the push as "a very hard push. My neck kind of whipped back" and claimed that Sheena proceeded to poke her multiple times in the face.  A few seconds later, Fadel stated that she "was yoked up and punched [by Shawnee]" resulting in Fadel "chuck[ing] her off" and "sw[inging] back on the girl."  Shawnee was pulled off and the fight between Fadel and Sheena continued.  Fadel stated that Sheena hit her with a phone on her forehead.  Fadel recalled being hit two or three times.

{¶ 22} During the incident Fadel felt like she "was being attacked [and] had to defend" herself.  Fadel was "scared" because Sheena was bigger than her and because she had an injured arm.  Fadel claimed she and Sheena had a history of fighting, explaining that her arm was in a soft cast on the night of the incident because Sheena had pushed her over at a party on October 22, 2022.  She explained that Sheena was "bullying, pushing, shoving, knocking [her] off of a headstand, even throwing a chair at [her] that night."  As a result of the October incident, Fadel had a cast on her arm.  However, by the night of the fight, Fadel had a soft cast.

{¶ 23} According to Fadel the fight only lasted two minutes. After the fight was over, Fadel testified that she "continued to party."

{¶ 24} When asked about her Instagram message in which she said she choked Sheena, Fadel explained that she used "speech to text" and she "meant to say chucked, chucked her meaning push her off of me." However, Fadel was reminded that that same Instagram message continues and says, "I saw her sister coming out of the corner of my eye, so I punched her. So I beat the one I was already choking." Fadel simply responded, "[a]utocorrect."

### E. Ashley Gaines

{¶ 25} Gaines explained that while she was dancing, she heard a "commotion." Gaines was unsure where Fadel was, so she began looking for her. Gaines realized the "commotion" was a fight when Shawnee had been pulled away from Fadel and Sheena. At that time, Shawnee grabbed Gaines by the hair and Gaines "started swinging at her." Gaines and Shawnee's altercation lasted "less than a minute."

## III. Law and Analysis

{¶ 26} We will address Fadel's assignments of error out of order for ease of discussion.

### A. Sufficiency and Manifest Weight of the Evidence

{¶ 27} In her third (sufficiency) and fourth (manifest weight) assignments of error, Fadel argues that her conviction for felonious assault against Shawnee is not supported by sufficient evidence and the jury lost its way in convicting her because

there is no evidence of complicity and she "never touched" Shawnee. Fadel also argues that she acted in self-defense against Sheena.

{¶ 28} Fadel was convicted of two counts of felonious assault in violation of R.C. 2903.11(A)(1), which provides, in part, that

[n]o person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn[.]

{¶ 29} "[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed," would convince the average mind of defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 30} A challenge to the manifest weight of the evidence "addresses the evidence's effect of inducing belief. * * * In other words, a reviewing court asks whose evidence is more persuasive the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against

the weight of the evidence, the appellate court sits as the 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Reversing a conviction under a manifest weight theory "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

### 1. Complicity

{¶ 31} Fadel argues "there was no evidence that Fadel aided or acted in concert with Gaines" and therefore there was insufficient evidence to convict her of felonious assault against Shawnee. We disagree.

{¶ 32} Under Ohio's complicity statute, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). A defendant guilty of complicity "shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated * * * in terms of the principal offense." R.C. 2923.03(F).

> "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime."

*State v. Sutton*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074, ¶ 33, quoting *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus.

{¶ 33} The state presented sufficient evidence of complicity to convict Fadel of felonious assault against Shawnee. The evidence demonstrated that Fadel and Gaines were together, away from Sheena and Shawnee prior to the fight. Sheena testified that at approximately 2 a.m., Fadel approached her on the dance floor and hit her as she tried to walk away. According to Shawnee, at the moment she saw Fadel hit Sheena for the first time, Gaines struck her. Further, according to Sheena and Shawnee, a few moments after Fadel began "pointing at" Sheena, Fadel and Gaines began attacking them. Sheena testified that she suffered injuries from being struck by Fadel with a serrated object. Shawnee testified that she was struck with the same object leaving the same injuries. If believed, this evidence could sustain Fadel's conviction for felonious assault against Shawnee in that Fadel supported, assisted, encouraged, cooperated with, advised, or incited Gaines to attack Shawnee.

{¶ 34} Further, under the unique facts of this case, we find that the jury's verdict was not against the manifest weight of the evidence. That is, this is not the extraordinary case that warrants a finding that the jury clearly lost its way in believing Shawnee over Fadel that Fadel and Gaines supported, assisted, encouraged, cooperated with, advised, or incited each other in the fight. While Fadel testified that she did not plan the fight with Sheena and Shawnee, the jury also heard testimony from Shawnee that the fight was coordinated. Shawnee testified she saw Fadel approach Sheena, and at that moment Gaines hit Shawnee. This court has consistently held that "when considering a manifest weight challenge, the trier of fact is in the best position to take into account inconsistencies, along with the

witness's manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible." *State v. Holloway*, 8th Dist. Cuyahoga No. 101289, 2015-Ohio-1015, ¶ 42.

{¶ 35} Accordingly, we find that the state presented sufficient evidence to support Fadel's convictions for felonious assault against Shawnee, and Fadel's conviction was not against the manifest weight of the evidence.

### 2. Self-Defense

{¶ 36} Next, Fadel argues that she acted in self-defense and, therefore, her convictions must be overturned.

{¶ 37} Prior to finding Fadel guilty of both counts of felonious assault, the jury was instructed to consider whether she acted in self-defense. Pursuant to R.C. 2901.05, self-defense is defined as follows:

> (B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶ 38} In cases involving the use of nondeadly force, the affirmative defense of self-defense applies where:

> (1) the defendant was not at fault in creating the situation giving rise to the affray in which the use of force occurred, (2) the defendant had reasonable grounds to believe and an honest belief, even if mistaken, that he or she was in imminent danger of bodily harm and (3) the only means to protect himself or herself from such danger was the use of force not likely to cause death or great bodily harm, i.e., the defendant

did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm.

*State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 43 (8th Dist.), citing *Ohio Jury Instructions*, CR Section 421.19 (Rev. Apr. 13, 2019).

{¶ 39} "In other words, if the accused satisfies the burden of presenting evidence that tends to support that they acted in self-defense, the burden shifts to the state to disprove at least one of the elements above." *State v. Smith*, 8th Dist. Cuyahoga No. 112233, 2023-Ohio-3973, ¶ 30, citing *Jacinto* at ¶ 46; *State v. Walker*, 8th Dist. Cuyahoga No. 109328, 2021-Ohio-2037, ¶ 13 ("[i]n light of the cumulative nature of the self-defense elements, the state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden * * *.").

{¶ 40} Upon review, we find that Fadel met her initial burden of production, in that the evidence presented during trial raised the question of self-defense. Specifically, Fadel testified that (1) Sheena initiated the confrontation when she pushed and poked her, (2) she felt threatened because Sheena was bigger than herself, (3) she was injured, and (4) she acted in self-defense.

{¶ 41} Under R.C. 2905.01(B)(1), the burden then shifted to the state to prove, beyond a reasonable doubt, that Fadel did not act in self-defense by showing at least one of three factors. The first factor is whether Fadel was at fault in creating the situation giving rise to the fight. In assessing whether the defendant was at fault in a self-defense scenario, courts ask "in essence, whether the defendant was the initial aggressor." *State v. Gardner*, 8th Dist. Cuyahoga No. 110606, 2022-Ohio-

381, ¶ 25. Here, the jury heard from both Sheena and Shawnee that they did not provoke Fadel prior to being attacked. Sheena stated that she stayed away from Fadel the entire evening and that Fadel angrily approached her on the dance floor before Fadel began to hit her.

{¶ 42} Moreover, under the third factor, self-defense is limited to situations where the only means available to Fadel to protect herself from danger was the use of force. While not demonstrative of the entire encounter, video evidence depicted Sheena lying on the ground, defenseless and not taking any actions to defend herself as Fadel repeatedly hit her. This evidence is consistent with a finding that Fadel was not in imminent danger of harm at that time.

{¶ 43} Accordingly, we find that the state met its burden in presenting sufficient evidence that Fadel did not act in self-defense.

{¶ 44} Moreover, although the jury heard testimony from Fadel that she was not the aggressor, we again note that the jury was "in the best position to take into account inconsistencies, along with the witness's manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible." *Holloway*, 8th Dist. Cuyahoga No. 101289, 2015-Ohio-1015, at ¶ 42. Given the totality of the evidence, we find that this is not the exceptional case in which the evidence weighs heavily against the jury's rejection of Fadel's self-defense argument.

{¶ 45} Fadel's third and fourth assignments of error are overruled.

## B. Aggravated Assault

{¶ 46} In her first and second assignments of error, Fadel argues that the jury should have been instructed on the inferior offense of aggravated assault.

{¶ 47} Aggravated assault is defined in R.C. 2903.12(A) as follows:

No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm to another or to another's unborn.

### 1. Ineffective Assistance of Counsel

{¶ 48} In her first assignment of error, Fadel argues that she received ineffective assistance of trial counsel when he failed to request a jury instruction for the inferior offense of aggravated assault.

{¶ 49} To succeed on a claim of ineffective assistance of counsel, a defendant must establish that his or her attorney's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* at 697. *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 50} "As a general matter, defense counsel's tactical decisions and trial strategies, even 'debatable' ones, do not constitute ineffective assistance of counsel."

*State v. Scarton*, 8th Dist. Cuyahoga No. 108474, 2020-Ohio-2952, ¶ 90. A defense counsel's decision about which theory or defense to pursue at trial is a matter of trial strategy "'within the exclusive province of defense counsel to make after consultation with his [or her] client.'" *State v. Murphy*, 91 Ohio St.3d 516, 524, 2747 N.E.2d 765 (2001), quoting *Lewis v. Alexander*, 11 F.3d 1349, 1354 (6th Cir.1993); *Scarton* at ¶ 99.

{¶ 51} This court has recognized that aggravated assault is incompatible with a theory of self-defense because self-defense requires proof of fear while aggravated assault requires a showing of a sudden passion or rage. *State v. Hughkeith*, 2023-Ohio-1217, 212 N.E.3d 1147, ¶ 102 (8th Dist.); *State v. Bouie*, 8th Dist. Cuyahoga No. 108095, 2019-Ohio-4579, ¶ 47 ("[i]t has been held that in most cases, jury instructions on both self-defense and serious provocation are inconsistent" because "the mental states of fear as required for self-defense and rage as required for aggravated assault are incompatible.").

{¶ 52} In *Hughkeith*, this court overruled an appellant's assignment of error that his trial counsel was ineffective for not requesting an aggravated assault instruction when he was charged with felonious assault and proceeded to trial on a self-defense theory. The *Hughkeith* Court stated:

> Contrary to, and inconsistent with, defense counsel's theory and interpretation of the evidence, Hughkeith now argues that a jury instruction on the inferior-degree offense[] of * * * aggravated assault was warranted in this case. As stated, however, defense counsel maintained throughout the entirety of the trial that Hughkeith acted in self-defense and only fired the fatal gunshots because he feared imminent death or great bodily harm. At no point did the defense argue

or introduce evidence to insinuate that Hughkeith acted under the influence of sudden passion or in a fit of rage. This was because defense counsel sought an acquittal in this case based upon counsel's perception of the state's evidence; not a conviction on an inferior offense. *See State v. Scarton*, 8th Dist. Cuyahoga No. 108474, 2020-Ohio-2952, ¶ 99; *State v. Lenard*, 8th Dist. Cuyahoga Nos. 105342 and 105343, 2018-Ohio-4847, ¶ 18; *State v. Carter*, 8th Dist. Cuyahoga No. 104653, 2017-Ohio-5573, ¶ 53-54 (Failing to request an instruction on an inferior offense does not rise to the level of ineffective assistance of counsel where trial counsel's strategy was to obtain an acquittal rather than a conviction of an inferior offense.). Trial counsel's strategy at trial, even if "questionable" or "if, in hindsight, it looks as if a better strategy had been available," does not support a claim of ineffective assistance of counsel. *See, e.g., State v. Cottrell*, 4th Dist. Ross Nos. 11CA3241 and 11CA3242, 2012-Ohio-4583, ¶ 21; *State v. Henderson*, 7th Dist. Mahoning No. 15 MA 0137, 2018-Ohio-2816, ¶ 71-73.

*Hughkeith* at ¶ 103.

{¶ 53} Similarly, Fadel's trial counsel sought an acquittal on the theory that she acted in self-defense. In closing arguments, Fadel's trial counsel stated, "[W]e believe in this case they should be acquitted, both of them, including Allison Fadel, with these charges that were brought against her. * * * [T]he State cannot prove that this was not self-defense." Accordingly, we find that Fadel has not demonstrated that her trial counsel's trial strategy amounted to ineffective assistance of counsel.

{¶ 54} Fadel's first assignment of error is overruled.

### 2. Plain Error

{¶ 55} Fadel argues in her second assignment of error that the trial court committed plain error when it failed to instruct the jury on aggravated assault. We disagree.

{¶ 56} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." It is well-established law that a "failure to object waives all but plain error." *State v. Harris*, 8th Dist. Cuyahoga No. 110982, 2022-Ohio-4630, ¶ 35.

{¶ 57} To review for plain error, courts must engage in a three-part test. *State v. Barnes*, 94 Ohio St.3d 21, 759 N.E.2d 1240 (2002).

> First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

(Emphasis sic.) *Id.* at 27.

{¶ 58} Generally, "[a] charge on a lesser included or inferior offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included or inferior offense." *State v. Carter*, 2018-Ohio-3671, 119 N.E.3d 896, ¶ 59 (8th Dist.), citing *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus. When trial courts determine whether an inferior-offense instruction is appropriate, the trial court must view the evidence in the light most favorable to the defendant. *Id.* at ¶ 59, citing *State v. Monroe*, 105 Ohio St. 3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 37.

{¶ 59} "An instruction is not warranted, however, every time 'some evidence' is presented on a lesser-included or inferior offense." *Hughkeith*, 2023-Ohio-1217, 212 N.E.3d 1147, at ¶ 94.

> To require an instruction * * * every time some evidence, however minute, is presented going to a lesser-included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser-included (or inferior-degree) offense.

*State v. Smith*, 8th Dist. Cuyahoga No. 90478, 2009-Ohio-2244, ¶ 12, citing *State v. Shane*, 63 Ohio St.3d 630, 633, 590 N.E.2d 272 (1992). "Thus, a court must find there is sufficient evidence to allow a jury to reasonably reject the greater offense and find the defendant guilty on the lesser-included or inferior offense" before determining the instruction was warranted. *Hughkeith* at ¶ 94, citing *Shane* at 632-633.

{¶ 60} In the case at hand, the court heard testimony from Fadel that she is "afraid of anyone that wants to hurt" her. She felt scared and that she needed to defend herself against Sheena because of her size and broken arm. There was no testimony that she acted out of sudden passion or in a fit of rage. While some of Fadel's Instagram messages state that she "snapped" or "lost it," Fadel did not testify that she felt that way when Sheena allegedly bumped into her. Therefore, even though there is arguably "some evidence" of a fit of rage, we find that the trial court did not plainly err when it did not instruct the jury regarding aggravated assault.

{¶ 61} Fadel's second assignment of error is overruled.

{¶ 62} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

MARY EILEEN KILBANE, P.J., and
EMANUELLA D. GROVES, J., CONCUR